Fischer v. Fuelberth.

ROBERT C. FISCHER, APPELLANT, V. WALTER FUELBERTH, APPELLEE.

FILED FEBRUARY 27, 1923. No. 22218.

1. **Estoppel.** The rule that, where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation is begun, change his ground and put his conduct upon another and different consideration, that he is estopped from doing it by a settled principle of law, does not apply to one who, at the time he gave a reason for his conduct, had no knowledge, actual or imputed, of the existence of an additional ground of defense which he afterwards learned and respecting the assertion of which he is sought to be estopped.

2. **Pleading:** DEFENSES. In such case, in a suit against him, the defendant may set up, as one of his defenses, the after-discovered ground, as well as the one first assigned, and be permitted to support the same by evidence and have the same submitted to the jury under proper instructions.

APPEAL from the district court for Pierce county: WILLIAM V. ALLEN, JUDGE. *Affirmed.*

*M. H. Leamy,* for appellant.

*Ora S. Spillman, contra.*

Heard before MORRISSEY, C. J., LETTON, DEAN, ALDRICH and GOOD, JJ., RAPER and TROUP, District Judges.

TROUP, District Judge.

An action for damages alleged to have been sustained by plaintiff by reason of failure of defendant to comply with his bid for a quantity of hay at an auction sale.

It is alleged in the petition that on January 6, 1920, the plaintiff being possessed of a large amount of personal property, including a quantity of alfalfa hay, exposed the same to public sale at auction, and defendant, being present, bid off 40.3 tons of said hay at an agreed price of $15 a ton and the same was thereupon sold to defendant, the sale amounting to $604.50; that thereafter the defendant refused to accept said hay and pay for the same; thereupon plaintiff notified defendant that he would resell said hay and hold the defendant responsible for any deficiency that might arise by reason thereof, and on February 27, 1920, plaintiff did resell said hay at public auction for the sum of $277.64, which, it is alleged, was the highest price obtainable therefor, and in doing so incurred an additional expense of $8.32, making his damages sustained the sum of $335.18, for which he prays judgment in a suit brought in the district court for Pierce county.

On April 4, 1921, the day before the commencement of the trial in the district court, the defendant filed an answer in which he admits the purchase of the hay at public sale referred to, but alleges that previous to and at the time he purchased the same he was told by plaintiff that the hay was at the place of one Charles Mordhorst, six miles distant from the home of defendant, which was easily accessible thereto, whereas in truth and in fact, as he learned afterwards, said hay was located at the place of one Fred Mordhorst, a distance of 18 miles from defendant's home and not easily accessible thereto, and thereupon and for that reason the defendant refused to accept said hay and so notified the plaintiff.

On April 5, 1921, the same being the day the trial in the district court began, the defendant filed an amended answer in which he alleged the matters set forth in his original answer, and further alleged that at the sale at which defendant purchased the said hay the same was sold by sample, which sample was ex-

hibited to and examined by defendant, and plaintiff, being present, stated to defendant and other bidders that the hay offered for sale was of the same kind and quality as the sample, whereas in truth and in fact it was greatly inferior in quality and was not worth to exceed one-half the value it would have been had it equaled the sample exhibited, all of which was well known to the plaintiff, but not known to defendant, and defendant, relying upon the statements of plaintiff as to the location and quality of said hay, purchased the same, whereas if he had known otherwise he would not have bid therefor.

Plaintiff, replying, denies all allegations of new matter contained in defendant's answer, and further alleges that at the time the defendant refused to comply with his bid and pay for said hay, and at no time since did the defendant make any objection to the quality of said hay or refuse to comply with his bid for the reason said hay was not of the kind or quality represented, and that defendant, having given one reason for his conduct and decision touching said purchase of said hay, cannot now, after litigation has begun, change his ground and put his conduct upon another and different consideration.

At the trial plaintiff objected to the admission of any and all testimony in support of the defendant's claim that the hay was not as represented for the reasons set forth in his reply, but the objections were overruled and the evidence admitted. At the close of the trial plaintiff tendered an instruction covering the proposition and theory contended for in his reply, which instruction the court refused, and instructed the **jury** upon that subject as follows:

"No. 11. If you find from the evidence that, shortly after the sale, the defendant discovered that the hay was not located on the Charles Mordhorst farm, but on the Fred Mordhorst farm, distant about 18 miles from his home, and for that reason he rescinded the transaction

and refused to make the settlement and payment pre-
scribed by the terms of the sale, and you further find
that thereafter he further discovered that the hay
was not as represented by the plaintiff and did not
comply with the sample exhibited at the time of the
sale, but was inferior in quality, then the fact that he
placed his refusal to make payment and settlement in
the first instance on the ground that the hay was not
situated on the Charles Mordhorst farm, but on the Fred
Mordhorst farm, would not preclude him from
showing the inferior quality of the hay."

The jury returned a verdict for the defendant. The
plaintiff appeals.

The sole question presented by the briefs of both
sides, and therefore the sole question for consideration
and determination here, is: Did the court err in
admitting testimony in support of the defense respecting
the alleged misrepresentations as to the quality of
the hay and by giving the instruction above quoted and
refusing to give the instruction tendered by plaintiff?

The plaintiff contends for the application of the rule
that, where a party gives a reason for his conduct
and decision touching anything involved in a con-
troversy, he cannot, after litigation has begun, change
his ground and put his conduct upon another and
different consideration. He is not permitted thus to
mend his hold. He is estopped from doing it by a
settled principle of law.

This is a familiar and well-established rule in this and
many other jurisdictions, and in the opinion of the
writer is a sound and most wholesome one to prevent,
so far as may be, litigants, so disposed, from trifling
with their solemn contracts and other like legal ob-
ligations when called into court for a breach thereof,
but in our opinion this rule cannot be made to apply in
the instant case. We fear that the learned counsel for
the plaintiff has over-looked, for the time being, the fact
that knowledge, either actual or imputed, by the party

complained against, of the existence of the subject-matter concerning which he is sought to be estopped, is an indispensable element of estoppel.

The undisputed evidence in the case shows that, at the time the defendant refused to complete his contract of purchase and gave as his reason therefor the alleged misrepresentation of the location of the hay, he did not know of the inferior quality of the hay and had no means· of knowing it; it was not until a "week or so after" that he learned of the inferior quality of the hay as compared with the sample exhibited at the sale. There is no evidence that after defendant gave his first reason for declining to complete his purchase he ever had any communication with plaintiff on the subject. Now, after he learned of the additional reason, was there a legal duty imposed upon the defendant to communicate the same to the plaintiff before he could avail himself of this additional defense to plaintiff's suit? In our opinion there was not. To illustrate: The defendant, in the first instance, might have refused to complete his contract and remain silent as to any or all reasons he might have had for his conduct, no matter how many he may have believed existed, and still, when sued, set up in his answer any and all defenses available to him, whether coming to his knowledge before or after suit, without apprising the plaintiff of what these defenses were. So, in the present case, when plaintiff demanded of defendant a completion of his purchase by payment for the hay, the defendant refused, giving as his reason therefor the only one of which he then had knowledge, namely, the alleged misrepresentation of the location of the hay, and it was not until afterwards that he learned of the additional objection, to wit, the alleged comparative inferior quality of the hay with the sample. This, as we have seen, defendant was not obliged to communicate to •plaintiff. After knowledge of the additional reason, defendant made no declaration respecting the transaction, and therefore could not be estopped from asserting

Fischer v. Fuelberth.

the latter reason as one of his defenses. The record shows that he asserted both, introduced evidence in support of both, and appropriate instructions respecting both were submitted to the jury, all of which we think properly may be done, and without violation of the rule in question, and without conflict with any decision enforcing the rule, of which we are aware. An examination of all of the many decisions in which the rule is enforced, whether in this state or elsewhere, which an exhaustive search has brought to our attention, without exception, discloses the fact that the person held to be estopped had knowledge, either actual or imputed, of the fact or facts constituting his subsequently offered defense at the time he gave to his adversary the first reason or excuse for his conduct. Of course, it is plain to see that one should expect to find this fact present in all such cases; otherwise, no ground for estoppel would exist.

It is true that defendant's answer was long-delayed, and even then his first answer, filed the day before the trial, did not contain this so-called second defense, and it was not until his amended answer, filed the day the trial began, that this defense was first set up. No objection was made by the defendant to the filing of either of these answers, but, in any event, permission to file the same when they were filed was within the sound discretion of the court. The assertion of this belated defense under the facts disclosed was a circumstance nevertheless which the jury had a right to consider as a possible reflection upon its genuineness, and which it will be presumed the jury did consider in arriving at their verdict.

We think there was no error on the part of the trial court in dealing with the matters complained of, and its judgment therefore must be

AFFIRMED.